UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 03-CV-12278-JLA

MICHAEL W. PANAGAKOS,

    Plaintiff

v.

WAYNE FOSTIN, individually and as
Building Inspector of the Town of Fairhaven,
TOWN OF FAIRHAVEN,

    Defendant

**DEFENDANTS' PARTIAL MOTION
FOR JUDGMENT ON THE PLEADINGS**

Defendants Wayne Fostin and Town of Fairhaven hereby move pursuant to

Fed.R.Civ.P.12(c) to dismiss Count I in part, and Counts II-V against them for failure to state a

claim upon which relief may be granted. As grounds therefor, the defendants rely upon and

incorporate as if fully set forth herein their Memorandum of Reasons in Support of Defendants'

Partial Motion for Judgment on the Pleadings.

WHEREFORE, the defendants respectfully request that Count I (in part), and Counts II-

V be dismissed against them for failure to state a claim upon which relief may be granted.

DEFENDANTS,

By their attorneys,

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on 3/5/04
_____

_____
Joseph L. Tehan, Jr. (BBO# 494020)
Katharine Goree Doyle (BBO# 634131)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

215004/METG/0502

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 03-CV-12278-JLA

MICHAEL W. PANAGAKOS,

     Plaintiff

v.

WAYNE FOSTIN, individually and as
Building Inspector of the Town of Fairhaven,
TOWN OF FAIRHAVEN,

     Defendant

MEMORANDUM OF REASONS IN
SUPPORT OF DEFENDANTS'
PARTIAL MOTION FOR
JUDGMENT ON THE PLEADINGS

I.     INTRODUCTION

The plaintiff, Michael W. Panagakos ("Panagakos") has filed a six-count complaint, all

arising from the denial of a building permit by defendant Wayne Fostin, the Building Inspector

for the Town of Fairhaven ("Building Inspector"). Panagakos seeks a writ of mandamus to force

the Building Inspector to grant him a building permit (Count I); alleges violations of his civil

rights under the Fourteenth Amendment to the U.S. Constitution (Counts II, III); alleges

violations of the Massachusetts Equal Rights Act (Count IV); alleges a civil conspiracy (Count

V) and seeks declaratory judgment that he is entitled to a building permit (Count VI).

II.     FACTS & PROCEDURAL HISTORY[1]

1.     Panagakos, a developer of real estate, is the owner of certain real estate located at

240 Bridge Street, Fairhaven, MA ("the Premises"). Complaint, ¶5.

2.     On or about April 22, 2003, Panagakos submitted to the Building Inspector an

application for a foundation and/or building permit regarding the Premises, along with plans,

---

[1] The Facts recited herein taken from the Complaint and are accepted as true for the purposes of the Motion to
Dismiss only, as required by Mass. R. Civ. P. 12(b)(6). See Coyne v. Somerville, 972 F. 2d 440 (1st Cir. 1992).

approval from the Fire Department, Worker's Compensation Certificate, Notice of Availability of Sewer and Water from the Department of Public Works and Energy Compliance reports. Id., ¶6. A check for the application fee was tendered but not taken because the Building Department was not certain of what the fee would be. Id. The applicant for the permit was Panagakos' architect. Id.

3.    On or about April 30, 2003, the Building Inspector responded to the application for a building/foundation permit by advising Panagakos that a permit could not issue because (i) a special permit was required for drive-thru windows, (ii) the parking did not comply because the plans showed no fixed seating and (iii) Panagakos could not use controlled construction for a project the size of Panagakos' proposed development and that a licensed construction supervisor would need to pull the permit. Id., ¶7.

4.    On or about May 9, 2003, Panagakos advised the Building Inspector that Panagakos would apply for said special permit for any drive-thru window. Id., ¶8. The plans did not specifically call for a drive-thru window. Id. Panagakos also filed with the Building Inspector a fixed seating plan. Id. Panagakos also advised the Building Inspector that although controlled construction was not required for the project, Panagakos would use controlled construction with Panagakos' architect pulling the permit. Id. Panagakos also requested the issuance of a foundation only permit at that time. Id.

5.    On or about May 12, 2003, the Building Inspector advised Panagakos that the special permit process applied to the entire project and no permit of any kind could issue until the special permit process was complete. Id., ¶9. Panagakos offered to remove any reference to a menu board from the plans to no avail. Id.

2

6.    On or about May 23, 2003, the Building Inspector replied, indicating that the fixed seating plan was insufficient with regard to parking issues, that the plan did not provide needed detail for a Board of Health review, that Panagakos would require curb cut and driveway approval from the DPW, that no permit could issue until a special permit was approved for the drive-thru window and, finally, that controlled construction could not be used and a licensed construction supervisor must be hired. Id., ¶10.

7.    On or about June 5, 2003, Panagakos advised the Building Inspector that he disagreed with the Building Inspector's conclusions and directions. Id., ¶11. He again requested at least a foundation permit. Id.

8.    Panagakos then sought approval of the proposed driveways and curb cuts from Macy Joseph, the Town Safety Officer ("Joseph"). Id., ¶12. On June 11, 3003, Panagakos met with Joseph regarding said driveways and curb cuts and was advised by Joseph that the driveways and curb cuts would not be approved because they failed to comply with the Town's curb cut regulations. Id. Additionally, Joseph stated that he would recommend that no curb cuts be allowed on Alden Road, a street which abuts the Premises. Id.

9.    On or about June 23, 2003, Panagakos' engineer requested that the Superintendent of Public Works place the issue of Panagakos' curb cuts and driveways on the agenda for the Board of Public Works meeting to have the Board review the denial. Id., ¶14. The Superintendent indicated that he could not place the matter on the agenda of the Board of Public Works without speaking with Town Counsel. Id., ¶15. On July 17, 2003, Panagakos requested and explanation of how the Building Inspector was involved in the DPW's review of driveways and curb cuts but never received a response. Id., ¶15.

10.    On or about August 6, 2003 Panagakos renewed his request for a hearing before the Board of Public Works because he could not obtain approval of his conforming curb cuts and driveway through routine procedures. Id., ¶16.

11.    On or about August 12, 2003, in response to Panagakos' request of August 6, 2003, Panagakos was advised by the Superintendent of Public Works that the failure to approve his curb cuts and driveway was due to a mix up regarding the plans being reviewed and that his curb cuts and driveway were now approved by the Superintendent of Public Works and the Safety Officer. Id., ¶17.

12.    Upon approval of his curb cuts and driveway, Panagakos renewed his permit request for a building permit, or at least a foundation permit. Id., ¶18.

13.    Panagakos was refused a building or foundation permit. Id., ¶19.

III.    ARGUMENT

A.    Standard for Motions for Judgment on the Pleadings

A motion for judgment on the pleadings, made pursuant to Fed.R.Civ.P. 12(c), tests the legal sufficiency of the complaint. See Furtick v. Medford Housing Authority, 963 F. Supp. 64, 67 (D. Mass.1997).  In ruling on a motion for judgment on the pleadings, the court must accept all well-pleaded facts as alleged in the complaint as true and view them in the light most favorable to the plaintiff. See Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule (12)(b)(6) motion. Massachusetts Candy & Tobacco Distributors, Inc. v. Golden Distributors, Ltd., 852 F. Supp. 63, 67 (D. Mass. 1994).

The court is not bound to accept as true conclusions of law or unwarranted deductions of fact. See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). Where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of her claims, dismissal is proper. See Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968). The pleading rules are "not entirely toothless," Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990) and the "minimal requirements are not tantamount to nonexistent requirements." Gilbert v. Cambridge, 932 F.2d 51, 62 (1st Cir. 1991). A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions." Fleming, 922 F.2d at 23. "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992); Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989).

The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert, 932 F.2d at 62.[2] "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what

_____

[2] "A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990), even when such phantoms are robed by the pleader in the guise of facts. We have been particularly insistent in section 1983 cases to require a fair degree of specificity -- a foundation of material facts -- to survive a motion to dismiss." Gilbert, 932 F.2d at 62 (citing Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983)), Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978).

experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." <u>Id.</u>

    B.    Plaintiff's Mandamus Claim Should Be Dismised Regarding the "Foundation" Permit (Count I)

Panagakos asserts that the Building Inspector's failure to issue a "building permit" is unsupported by any Building Code section or zoning ordinance. In the Complaint, however, Panagakos complains that the Building Inspector failed to issue either a building permit or a foundation permit. Panagakos cannot maintain an action in mandamus to demand the issuance of a foundation permit, because the Building Code explicitly renders the issuance of a foundation permit discretionary. Mandamus is unavailable to compel a municipal official to exercise his discretion in a particular manner.

To the extent Panagakos is challenging the failure of the building inspector to grant a foundation permit, such action is barred by law because the Building Code confers discretion upon the Building Inspector to grant such a foundation permit. Specifically, it states:

> The building official <u>may</u> issue a permit for the construction of foundations or any other part of a building or structure before the construction documents for the whole building or structure have been submitted, provided that adequate information and detailed statements have been filed complying with all of the pertinent requirements of 780 CMR. Work shall be limited to that work approved by the partial approval and further work shall proceed only when the building permit is amended in accordance with 780 CMR 110.13. The holder of such permit for the foundation or other parts of a building or structure shall proceed at the holder's own risk with the building operation and without assurance that a permit for the entire building or structure will be granted.

780 CMR 111.13.

The use of the word "'may' ... 'imports the existence of discretion.'" <u>Shea</u> v. <u>Board of Selectmen of Ware</u>, 34 Mass.App.Ct. 333, 615 N.E.2d 196 (1993) (quoting <u>Hunters Brook Realty Corp.</u> v. <u>Zoning Bd. of Appeals of Bourne</u>, 14 Mass.App.Ct. 76, 80, 436 N.E.2d 978

(1982)). Where the Legislature seeks to impose a mandatory obligation, it uses the word "shall." U.S. v. Ganz, 48 F.Supp. 323, 327 (D.Mass. 1942). Therefore the use of the word "may" is interpreted to confer discretion. Id.; see also United States v. Rodgers, 461 U.S. 677, 706 (1983).

Mandamus is not an appropriate remedy to obtain review of the decision of public officers who have acted with discretion to command them to act in new and different manner. Harding v. Commissioner of Ins., 352 Mass. 478, 480 225 N.E.2d 903 (1967). In determining whether mandamus jurisdiction is proper, the applicable statute, its legislative history, regulations promulgated pursuant to its terms, and any other relevant aids must be considered in determining scope of discretion officer enjoyed and accordingly, whether that discretion was abused. McMahon v. Califano, 476 F. Supp. 978, 981 (D. Mass. 1979). Relief provided in the nature of mandamus does not lie to compel a municipal officer to exercise his/her judgment or discretion in a particular way. Urban Transport, Inc. v. Mayor of Boston, 373 Mass. 693, 698, 369 N.E.2d 1135 (1977); Brennan v. Board of Election Com'rs of City of Boston, 310 Mass. 784, 788, 39 N.E.2d 636 (1942) Local 1445, United Food and Commercial Workers Union v. Police Chief of Natick, 29 Mass. App. Ct. 554, 560, 563 N.E.2d 693(1990), review denied, 409 Mass. 1102, 566 N.E.2d 1131 (1991). Furthermore, ordering an official body to make discretionary determinations is not a proper function of a writ of mandamus since, if the act is discretionary, there is no official duty to perform it. Channel Fish Co. v. Boston Fish Market Corp., 359 Mass. 185, 187, 268 N.E.2d 683 (1971). Therefore, at least as far as the foundation permit is concerned, a mandamus action should not lie and any claim seeking a writ of mandamus for its issuance should be dismissed.

C.    Panagakos Has Failed to State A Claim Upon Which Relief May Be Granted for Violations of His Civil Rights Under The Fourteenth Amendment To The U.S. Constitution and the Massachusetts Constitution Arising From The Denial Of A Building Permit By Defendant Wayne Fostin (Counts II, III)

Panagakos claims that the Building Inspector imposed requirements on the Building Inspector that have not been imposed on similarly situated property owners in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment and Articles 1 (equal protection)[3] and 12 (due process)[4] of the Massachusetts Declaration of Rights.  As set forth below, he has failed to state a claim upon which relief may be granted in either Count II or III, and both Counts should be dismissed against the Town and the Building Inspector.

1.    Panagakos Has Failed to Plead the Requisite Elements for A Claim of A Violation of His Rights to Equal Protection Under the Fourteenth Amendment or Article 1 of the Massachusetts Declaration of Rights (Count II)

To survive a motion to dismiss, an equal protection claim "must 'outline facts sufficient to convey specific instances of unlawful discrimination.'" "Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir.1990) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.1989)).  A plaintiff "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus."  Id. "[A]s a general matter, the equal protection clause serves to protect suspect classes and fundamental interests from inequitable treatment."  Yerardis's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d. 89, 94 (1st Cir. 1991) (Yerardis II).

---

[3] Review of an equal protection claim is the same under the Massachusetts Declaration of Rights as it is under the Fourteenth Amendment.  LaCava v. Lucander 58 Mass.App.Ct. 527, 791 N.E.2d 358 (2003); Case of Tobin, 424 Mass. 250, 675 N.E.2d 781 (1997).

[4] In the substantive due process context, the protection afforded under Article 12 is co-extensive with that provided under the Fourteenth Amendment and no greater protection is provided.  Walden v. Board of Registration in Nursing, 479 N.E.2d 665, 671 (Mass. 1985).

"Liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

Yerardis II, 932 F.2d at 92 (quoting Yerardis's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989) (Yerardis I) (internal citation omitted)) (emphasis supplied). Panagakos must therefore show both that he was selectively treated in contrast with others similarly situated, and that the selective treatment was based on an impermissible consideration. See Commonwealth v. Silva, 21 Mass.App.Ct. 536, 488 N.E. 2d 34 (1986). Cases in which a party successfully shows it was singled out for different treatment in violation of the equal protection clause are infrequent. See Yerardis II, 932 F.2d at 94.

Plaintiffs claiming an equal protection violation must first "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled ... out for unlawful oppression.'" Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir.1989) (citations omitted). The plaintiff must identify in the Complaint the characteristics which render him and other property owners similarly situated. Barrington Cove, Ltd. Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F. 3d 1, 8 (1st Cir. 2001). Panagakos here has neither identified others who were similarly situated, nor has identified any instances of disparate treatment.

Panagakos has not pled any basis for his selective treatment. Generally, an equal protection plaintiff must allege membership in a protected class. See Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995). The Supreme Court has recognized so-called "class of one" cases in limited circumstances. See, e.g., Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000).

However, such a claim is only available where Panagakos alleges, with sufficient specificity, that he is "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564.

The very same Court of Appeals whose decision was affirmed by the Supreme Court in Olech held that "class of one" equal protection claims must at least allege facts suggestive of an "improper motive" by the government defendant. Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (Posner, C.J.). Writing for the Seventh Circuit in Hilton, Chief Judge Posner explained:

> [W]e gloss 'no rational basis' in the unusual setting of "class of one" equal protection cases to mean that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position. We described the class of equal protection cases illustrated by Olech as "vindictive action" cases and said that they require "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." Id. (emphasis added).

The Hilton Court stated the obvious reason for a requirement that equal protection plaintiffs plead an improper motive or animus, noting that, "If a merely unexplained difference in . . . treatment . . . established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws." Id.; see also Wyman v. Zoning Bd. of Appeals of Grafton, 47 Mass.App.Ct. 635, 715 N.E.2d 459, 460 (Mass.App.Ct. 1999) (holding that equal protection claims are very seldom the means to seek review of the actions of land use agencies, with the door only slightly ajar for relief in "truly horrendous situations."). Panagakos may not therefore infer malice merely from different treatment. See Yerardis II, 932 F.2d at 93, Barrington Cove, 246 F.3d at 11.

As Panagakos has failed to identify others similarly situated or any impermissible consideration on which he considers the decisions of the Building Inspector was barred, as required for a claim of denial of his rights of equal protection under the law under the Fourteenth Amendment to the U.S. Constitution or Article 1 of the Massachusetts Declaration of Rights, Count II should be dismissed for failure to state a claim upon which relief may granted.

   2.    Panagakos Has Failed to Plead the Requisite Elements for A Claim of A Violation of His Rights to Substantive Due Process under the Fourteenth Amendment or Article 12 of the Massachusetts Declaration of Rights (Count III)

Panagakos alleges that the defendants have deprived him of his rights to substantive due process under the Fourteenth Amendment of the United States Constitution and Article 12 of the Massachusetts Declaration of Rights, because his decision to deny Panagakos a building or foundation permit is based on the "arbitrary and capricious whim" of the Building Inspector. Complaint, ¶29.[5] The United States Court of Appeals for the First Circuit and the Massachusetts Supreme Judicial Court have repeatedly expressed their reluctance to entertain substantive due process challenges to land use decisions by local officials. See, e.g., PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) ("This Court has repeatedly held...that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process."); Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir.1983) (alleging unreasonable delay on application for building permit); Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.1982); see also Amsden v. Moran,

---

[5] Based on this language, the defendants interpret the claim to allege a violation of the plaintiffs substantive due process rights. To the extent the plaintiff also asserts that his procedural due process rights have been violated, he has failed to state a claim upon which relief may be granted, because he had no property interest in a permit which he had not yet been granted and to which he had no legitimate entitlement. Chongris v. Board of Appeals of Town of Andover, 811F. 2d 26 (1st Cir.) cer. denied, 483 U.S. 1021 (1987). Furthermore, it is well-established that where post-deprivation remedies are available, a procedural due process claim will not avail. See Perez-Ruiz v. Grespo-Guillen, 25F. 31 40, 42 (1st Cir. 1994). Panagakos has state-provided remedies: an appeal to the Fairhaven Zoning Board of Appeals pursuant to G.L. c.40A§§8 and 15, and an appeal to the Building Code Appeals Board pursuant to 780 CMR 122.0.

11

904 F.2d 748, 757 (1st Cir.1990) (alleging state licensing board misuse of administrative process in refusing reinstatement of surveyor's license); Freeman v. Planning Board of West Boylston, 646 N.E.2d 139 (Mass. 1995) (reversing jury verdict of substantive due process violation against planning board), rev. denied, 516 U.S. 931 (1995). "Indeed, the First Circuit has held that denials, suspensions, and revocations of permits or professional licenses, including those involving procedural irregularity, do not ordinarily implicate substantive due process." See Fitzgerald v. Town of Kingston, 13 F.Supp.2d 119, 125 (D. Mass. 1999); Chongris v. Board of Appeals of Andover, 811 F.2d 38, 42 (1st Cir. 1987), cert. denied, 483 U.S. 1021 (1987).

A complaint pleads a substantive due process violation by a local administrative agency only if the facts alleged are "shocking or violative of universal standards of decency." Amsden, 904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir.1979), cert. denied, 444 U.S. 1035 (1980)). The First Circuit has particularly required "conscience shocking" behavior to be established for a plaintiff to pursue a claim for substantive due process in the zoning context. See Licari v. Femizzi, 22 F.3d 344, 349 (1st Cir. 1994). The level of misconduct must be "stunning, evidencing more than humdrum legal error." Amsden, 904 F.2d at 754 n.5. It is not enough to show that the board "exceeded, abused or 'distorted' its legal authority," Creative Env'ts, Inc., 680 F.2d at 833, or that it committed an outright violation of state law, Chiplin Enters., Inc. 712 F.2d at 1528.

In PFZ Properties, the First Circuit, reviewing the failure of a planning agency to act on an application for over four years, refused to consider this as "conscience shocking" activity. PFZ Properties, 928 F.2d at 31-32. In so ruling, the Court stated "[e]ven assuming that [the agency] engaged in delaying tactics and refused to issue permits for the...project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without

more, do not rise to the level of violations of the federal constitution under a substantive due process label." Id. Similarly, in Chiplin Enteprises, the First Circuit refused to find a substantive due process violation when a planning board, after granting preliminary approval to a development project, denied a building permit for the project. The Court stated "[a] mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct error." Chiplin Enterprises, 712 F.2d at 1528. Finally, in Freeman, the Supreme Judicial Court reversed a jury verdict finding a violation of substantive due process where a Planning Board repeatedly delayed granting approval of a subdivision application over a number of years and refused to comply with orders of a Superior Court judge, again stating that the actions of the Planning Board, even if made in error or bad faith, did not violate Panagakos' constitutional rights. Freeman, 646 N.E. 2d at 149.

Panagakos complains that he was unable to obtain a building permit over the course of approximately four months, even though he admits he received consistent feedback from the Building Inspector as to the deficiencies in the plans he provided. Complaint, ¶¶8-11. Such factual allegations do not support the conclusion that any "conscience-shocking" activity occurred, but instead merely that Panagakos is disgruntled by the response of the Building Inspector to his plans and disagrees with the Building Inspector's conclusions. As Panagakos has not pled the basis for a claim, that his due process rights have been violated Count III should be dismissed.

D.    Violations of the Massachusetts Equal Rights Act (Count IV)

The Massachusetts Equal Rights Act, G.L. c.93 §102(a), provides:

All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Massachusetts Appeals Court has established that only discrimination that is both purposeful and based on sex, race, color, creed, or national origin comes within the reach of the equal-rights statute; if any element is missing, a claim under the statute fails. LaCava v. Lucander, 58 Mass.App.Ct. 527, 791 N.E.2d 358 (2003). In his Complaint, Panagakos has not alleged membership in a protected class. His failure to do so provides the Court with sufficient grounds on which to dismiss Count IV. Delmonte v. Laidlaw Environmental Services, Inc., 46 F.Supp.2d 89, 95 (D.Mass. 1999) (rejecting plaintiff's contention that different treatment alone states claim under G.L. c.93 §102).

As Panagakos has failed to plead that the defendants discriminated against him on the basis of sex, race, color, creed, or national origin, he has failed to state a claim upon which relief may be granted in Count IV and such claim should be dismissed.

E.    Civil Conspiracy (Count V)

Civil conspiracy is an intentional tort, because an essential element of the claim is the knowing or deliberate act of the alleged conspirators to further the conspiracy. The Town is immune from liability for intentional torts pursuant to the Massachusetts Tort Claims Act, G.L. c.258 §10(c). Therefore Count V should be dismissed against it as it cannot as a matter of law, state a claim upon which relief may be granted. The civil conspiracy claims against the Building

14

Inspector are groundless, as Panagakos has failed to plead a single factual allegation demonstrating to the Court that the Building Inspector or any other town official acted deliberately or knowingly in concert against Panagakos.

Two types of claims for civil conspiracy have been delineated by Massachusetts courts. See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563-1564 (1st Cir.1994). The first type requires an element of coercion. Id. This type of claim is a "very limited cause of action in Massachusetts." Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985). "In order to state a claim of [this type of] civil conspiracy, plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." Id. (quotations omitted). The facts presented by Panagakos clearly do not satisfy this form of conspiracy, as his main complaint is that he is unable to obtain a building or foundation permit. The Building Inspector alone has the authority to deny him a building or foundation permit, regardless of the actions of other Town officials. See 780 CMR 106.2.

The second type of civil conspiracy is reflected in the Restatement (Second) of Torts, §876(a) (1977): "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him...." "For liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna, 43 F.3d at 1564; Restatement (Second) of Torts § 876 cmt. b.

In addition, in Kurker v. Hill, 44 Mass. App. Ct. 184, 689 N.E. 2d 833 (1998), the Massachusetts Appeals Court also acknowledged as a potential basis for recovery, without

15

explicitly adopting,[6] the form of conspiracy described in §876(b): "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he: (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself…" The Court noted, however, that: "[k]ey to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." Kurker at 189. "'In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result.'" Id. (quoting Stock v. Fife, 13 Mass.App.Ct. 75, 82 n. 10, 430 N.E.2d 845 (1982)). The failure of the second party to knowingly lend assistance or encouragement to the tortious conduct of another is fatal to the civil conspiracy claim. Stock, 13 Mass.App.Ct. at 82, 430 N.E.2d 845 (despite a common plan among friends to drink alcohol while driving to and from a nightclub, no joint liability from the mere presence of the defendant in the car when the driver ran a red light and struck another vehicle); Kyte v. Philip Morris, Inc., 408 Mass. at 167-168, 556 N.E.2d 1025 (no proof that the defendant cigarette manufacturer gave substantial assistance to a store's sale of cigarettes to minors or knew that the store's conduct constituted a breach of duty to minors purchasing cigarettes).

In the aforementioned forms of civil conspiracy, a deliberate or knowing act to further the conspiracy is required amongst the alleged conspirators. Panagakos has failed to plead any factual basis for his conclusions that such a conspiracy existed. Indeed, in his complaint, he

---

[6] In the Kurker decision, the Appeals Court acknowledged that only the form of conspiracy described in §876(a) has been explicitly adopted in Massachusetts. Kurker v. Hill, 44 Mass.App.Ct. 184, 189-190, 689 N.E.2d 833 (1998); Gutierrez v. Massachusetts Bay Transp. Authority, 437 Mass. 396, 772 N.E.2d 552 (2002) (stating that conspiracy requires a combination of persons acting pursuant to an agreement to injure the plaintiff); Hiles v. Episcopal Diocese of Massachusetts, 51 Mass.App.Ct. 220, 744 N.E.2d 1116 (2001) (discussing §876(a)).

alleges that the Building Inspector conspired with the Town to "to improperly interfere with" Panagakos' development. Complaint, ¶35. It is difficult to imagine how the Building Inspector conspired with a non-sentient municipal corporation. Even giving the Complaint the most generous of interpretations and assuming that Panagakos meant to refer to the other town officials identified in the Complaint, he does not provide any facts to support his theory. Instead, his claim of concerted action appears to be based on speculation:

> "On information and belief Joseph's refusal to approve Plaintiff's proposed curb cuts and driveways was at the direction of Fostin and not based on any failure of those proposed curb cuts to comply with DPW regulations." Complaint, ¶13.

> "On information and belief, the Superintendent of the Department of Public works advised Plaintiff's engineer that he could not approve Plaintiff's curb cuts and driveway without speaking with Fostin." Complaint, ¶15.

The mere fact that different officials in Town denied Panagakos' requests for relief does not support a conclusion that they acted in concert to deprive him of said relief. If that were the case, every applicant with deficient or noncompliant plans would have a cause of action. Instead, plaintiffs must plead factual allegations (as opposed to conclusory suppositions) that the officials accused of conspiring did, in fact, do so. In this case, Panagakos has not so pled, because he has no factual basis on which to base such a pleading.

As Panagakos has failed to plead an essential element of a claim for civil conspiracy, Count V should be dismissed.

F.     The Building Inspector is Entitled to Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 65 (1st Cir. 1997) (quoting Nereida-González v.

Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993)). The U.S. Supreme Court has emphasized the importance of deciding the qualified immunity defense "at the earliest possible stage in [the] litigation." Saucier v. Katz, 533 U.S. 194, 200-201 (2001). The same qualified immunity principles developed under the federal Civil Rights Act, 42 U.S.C. §1983, shield public officials from liability under the MCRA. See Duarte v. Healy, 405 Mass. 43, 47, 537 N.E.2d 1230, 1232 (1989); Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 595, 747 N.E. 2d.729, 746 (2001).

Two issues must be considered: (1) whether at the time of the alleged conduct there was a "clearly established" statutory or constitutional right that was violated; and (2) whether a reasonable person would have known that [his] conduct violated that right. See Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992); Landry v. Mier, 921 F. Supp. 880, 884 (D. Mass. 1996).

"With respect to the first inquiry, the plaintiff bears the burden of demonstrating the existence of a clearly established right." Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992). Whether a right is clearly established by the plaintiff is a question of law for the Court. Landry, 921 F. Supp. at 884. "A right is not 'clearly established' unless, at the time the challenged conduct occurred, 'the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular right.'" Id. (quoting Martinez v. Colon, 54 F.3d 980, 988 (1st Cir.1995)). In order to defeat government officials' invocation of qualified immunity as a defense, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right in light of the existing law, the unlawfulness must be apparent." Duca v. Martins, 941 F. Supp. 1281, 1287 (D. Mass. 1996) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis supplied).

The second inquiry considers whether a reasonable person would have known that his conduct violated that right, using the standard of objective reasonableness. See Bailey, 957 F.2d at 929. "The operative inquiry here is not whether the defendants actually abridged a plaintiff's rights, for the mere fact that a violation occurred is not enough to defeat qualified immunity unless it is further demonstrated that the defendants' conduct was unreasonable." Landry, 921 F. Supp. at 885.

The classic question that a qualified immunity defense poses is whether the allegedly violated federal right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly. See, e.g., Anderson, 483 U.S. at 638. A court must undertake an objective inquiry into the totality of the circumstances, with a view toward ascertaining whether the right allegedly infringed, articulated at an appropriate level of generality, was settled at the time of the public official's actions, and if so, whether the official's conduct was obviously inconsistent with that right. Id. at 638-40. Qualified immunity proposes to protect government functionaries who could not reasonably have predicted that their actions would abridge the rights of others, even though, at the end of the day, those officials may have engaged in rights-violating conduct. Id. at 639-41.

As discussed more fully in Section III.C., Panagakos has pled no factual allegations to support his theory that the Building Inspector violated his right to equal protection under the laws or due process pursuant to the Fourteenth Amendment of the U.S. Constitution or the Massachusetts Declaration of Rights. Indeed, on the facts alleged in the Complaint, it appears the Building Inspector has done no more than refused to issue a building permit on the basis because he does not believe Panagakos to have satisfied the criteria for obtaining one. No reasonable person in the Building Inspector's place would realize that a refusal to issue a

19

building permit, under the belief that issuance was not warranted, somehow violated Panagakos' civil rights. The Building Inspector is therefore entitled to qualified immunity and should be dismissed in his individual capacity.

G.   Official Capacity Claims in Counts II, III and IV Against the Building Inspector Are Duplicative to Those Against the Town and Should Be Dismissed

An "official capacity" suit against a government officer is in reality a suit against the government entity itself. See Brandon v. Holt, 469 U.S. 464, 471-472 (1985); American Policyholders Insurance Co. v. Nyacol Products, Inc., 989 F.2d 1256, 1259 (1st Cir. 1993) (citing Kentucky v. Graham, 473 U.S. 159 (1985)). The Town of Fairhaven is a named defendant in this action, and Panagakos has asserted the same civil rights claims against the Town, as he has against Panagakos. See Complaint. As a result, the "official capacity" claims against the Building Inspector are duplicative and must be dismissed.

IV.   CONCLUSION

WHEREFORE, the defendants respectfully request that Count I, in part, and Counts II-V be dismissed against them for failure to state a claim upon which relief may be granted.

                              DEFENDANTS,

                              TOWN OF FAIRHAVEN,
                              WAYNE FOSTIN,

                              By their attorneys,


                              Joseph L. Tehan, Jr. (BBO# 494020)
                              Katharine Goree Doyle (BBO# 634131)
                              Kopelman and Paige, P.C.
                              31 St. James Avenue
                              Boston, MA  02116
                              (617) 556-0007

214734/METG/0502

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 03-CV-12278-JLA

MICHAEL W. PANAGAKOS,

     Plaintiff

v.

WAYNE FOSTIN, individually and as
Building Inspector of the Town of Fairhaven,
TOWN OF FAIRHAVEN,

     Defendant

LOCAL RULE 7.1
CERTIFICATE OF CONFERRAL

Now comes the undersigned defense counsel, and hereby certifies that she conferred, via letter on March 2, 2004, with counsel for the plaintiff in a good faith effort to resolve or narrow the issues set forth in the Defendants' Partial Motion for Judgment on the Pleadings.

DEFENDANTS,

By their attorneys,

_Katharine Doyle_

Joseph L. Tehan, Jr. (BBO# 494020)
Katharine Goree Doyle (BBO# 634131)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

215024/METG/0502

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on __3/5/07__

_K. Doyle_

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
_____
EDWARD M. REILLY
DIRECTOR WESTERN OFFICE
_____
WILLIAM HEWIG III
JEANNE S. McKNIGHT

KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. MCENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICK. S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

March 5, 2004

BY HAND

Clerk
U.S. District Court
District of Massachusetts
U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Re:    Panagakos v. Fostin, et al.
       (Town of Fairhaven)
       United States District Court, C.A. No. 03-CV-12278-JLA

Dear Sir/Madam:

       Enclosed for filing in the above-referenced matter please find the Defendants' Partial
Motion for Judgment on the Pleadings, Memorandum of Reasons in support thereof, and Local
Rule 7.1 Certificate of Conferral.

       Thank you for your attention to this matter.  Please call me or Attorney Joseph Tehan if
you have any questions.

                                        Very truly yours,

                                        Katharine Goree Doyle

KGD/cmt
Enc.
cc:    Board of Selectmen (w/o enc.)
       Building Inspector (w/o enc.)
       Gregory J. Koldys, Esq.
       Thomas Crotty, Esq.
       Daniel Morrison, Esq. (MAS-0035437) (w/o enc.)
215021/Metg/0502