UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 03-CV-12278WGY

| | |
|---|---|
| MICHAEL W. PANAGAKOS, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>WAYNE FOSTIN, individually and as )<br>Building Inspector of the Town of )<br>Fairhaven, and the TOWN OF )<br>FAIRHAVEN, )<br>)<br>Defendants ) | **PLAINTIFF'S MEMORANDUM OF REASONS IN SUPPORT OF OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS** |

## I.  INTRODUCTION

Plaintiff's complaint arises out of the denial of a building permit and subsequent actions of Defendant Wayne Fostin, the Building Inspector for the Town of Fairhaven ("Building Inspector"). Plaintiff seeks a writ of mandamus to force the Building Inspector to issue a building permit (Count I); alleges a violation of his civil rights under the U.S. Constitution and the Massachusetts Declaration of rights (Counts II and III); alleges a violation of the Massachusetts Equal Rights Act (Count IV); alleges a civil conspiracy (Count V) and seeks a declaratory judgment that he is entitled to a building permit (Count VI).

## II.  ARGUMENT

### A.  Standard for Motions for Judgment on the Pleadings

In ruling on a motion for judgment on the pleadings made pursuant to Fed.R.Civ.P. 12(c), the Court must accept all well pleaded facts alleged in the complaint as true and view them in the light most favorable to the Plaintiff.  See: *Donovan v City of Haverhill*, 311 F.3d. 74, 76 (1st Cir. 2002); *Santiago de Castro v Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991). Only where it

appears to a certainty that the Plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim is dismissal proper. See: *Ballou v General Electric Co.*, 393 F 2d. 398 (1st Cir. 1968). The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule(12 (b)(6) motion. *Massachusetts Candy & Tobacco Distributors, Inc. v. Golden Distributors, Ltd.* 852 F. Supp. 63, 67 (D. Mass. 1994) Complaints should be read indulgently in favor of the pleader. See: *LaCava v Lucander*, 59 Mass. App,. Ct. 527 A complaint is sufficient against a motion to dismiss for failure to state a claim if it appears that the Plaintiff may be entitled to any form of relief, even though the particular relief demanded and the theory on which he seems to rely may not be appropriate. *Id.*, See: *Ballou, supra*

Plaintiff acknowledges that, notwithstanding that broad standard, the Court need not credit unsubstantiated conclusions unsupported by stated facts and that an increased degree of specificity may be required in section 1983 cases. *Gilbert v. Cambridge*, 932 F.2d. 51, 62 (1st Cir. 1991). To the extent Plaintiff's complaint fails to meet that degree of specificity Plaintiff would seek leave to amend his complaint to satisfy that requirement as described herein.

B.   <u>Mandamus claim regarding a foundation permit.</u>

Mandamus may be appropriate even regarding discretionary matters where bad faith, fraud, arbitrariness or capriciousness is present. See: *Urban Transport, Inc. v. Mayor of Boston*, 373 Mass. 693 (1977). Nevertheless, Plaintiff does not intend his count for mandamus to refer to the issuance of a foundation permit. The complaint for mandamus is seeking an order requiring the issuance of a building permit. Plaintiff's reference to the foundation permit is only as a further indication of the Building Inspector's efforts to delay development of Plaintiff's site:

even Plaintiff's effort to proceed at his own risk with no assurance that a permit for the building would be granted was not permitted.

C.     Equal Protection Claim.

Plaintiff's complaint fairly alleges that he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. [Complaint ¶22, 25, 26, 29  Plaintiff concedes that the complaint does not specifically identify the similarly situated persons who were treated differently and would seek to amend his complaint to add those allegations.

If allowed to amend his complaint, Plaintiff would add the following allegations:

- that the Building Inspector's determination that Plaintiff's plans propose a drive-thru window is based on the Building Inspector's assertion that, because there is pavement around the building, there is a drive-thru;

- that the Building Inspector made said assertion at a Board of Appeals hearing regarding his denial of the permit and that Plaintiff's proposed elimination of any window behind the building did not change the Building Inspector's position;

- that when asked by the Board of Appeals whether elimination of the window would eliminate the drive-thru problem, the Building Inspector's response was that it would not because the paving around building was still a drive-thru;

- that there is no definition of "drive-thru window" in the Fairhaven Zoning Ordinances;

3

- that there are numerous developments in the Town of Fairhaven with paving behind the building which were not deemed to have drive-thrus and were not required to obtain a special permit, including Cumberland Farms, Pizzeria Uno, Wal-Mart and Shaws, among others;

- that Wal-Mart and Shaws are similarly situated persons to Plaintiff's proposed development in the aspect on which the Building Inspector has concluded that Plaintiff requires a special permit, namely paving surrounding the building, yet no special permit for a drive-thru was required for those developments;

- that Pizzeria Uno is a restaurant which sells both on premises and take out food. It has paving around its building, including a drive lane which directly abuts the building. The same zoning provision requiring a special permit for drive-thru windows was in place when Pizzeria Uno was developed. The Building Inspector was the Building Inspector at the time of that development;

- that notwithstanding those similarities to Plaintiff's proposed development, Pizzeria Uno was not required to and did not obtain a special permit for a drive-thru before receiving its building permit or at any time since.

Plaintiff would also allege that the Building Inspector has expressed animosity toward the Plaintiff to third parties and that that animosity was the basis upon which the Building Inspector has acted in denying Plaintiff's application for a building permit and in attempting to block approval of curb cuts which he made a requirement of obtaining the building permit.

D.   Due Process

While "(t)his Court has repeatedly held...that rejection of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. *PFZ Properties*, 928 F.2d. 28, 31 (1st Cir. 1991), the Court has never announced a rule precluding district courts from finding substantive due process violations by land use planning officials in every conceivable case. *Licari v. Ferruzzi*, 22 F. 3d 344 (1st Cir. 1994). The door to federal relief based on substantive due process is open in extreme cases. *Nestor Colon Medina & Sucesores v Custodio*, 964 F. 2d 32 (1st Cir. 1992).

Plaintiff's complaint alleges that the Building Inspector has applied a different standard to his building permit application that that applied to similarly situated persons. The complaint alleges that the Building Inspector's action was without any legitimate basis. The complaint further alleges that the Building Inspector took steps to interfere with approval of Plaintiff's curb cuts and did, in fact, interfere with that approval. Plaintiff would seek to amend his complaint to allege that the Building Inspector's actions were the result of personal animosity toward Plaintiff and that Plaintiff was advised by a third party that, unless Plaintiff resolved a zoning variance appeal which Plaintiff had pending, the third party and his friend the Building Inspector would make certain that nothing would be built on Plaintiff's site. In fairness, Plaintiff cannot attribute acceptance of or agreement with that assertion by the Building Inspector but if such agreement is established through discovery, Plaintiff believes such conduct would rise to the level of conscience shocking behavior which would satisfy the requirements of *Licari* and *PFZ Properties*.

E. <u>Violation of Massachusetts Equal Rights Act</u>

Plaintiff concedes that he has not alleged membership in a protected class and that under existing case law interpreting the coverage of the Act, this count of the complaint is subject to dismissal.

F. <u>Civil Conspiracy</u>

Plaintiff's complaint alleges that the Building Inspector engaged in a civil conspiracy to deny or delay Plaintiff's ability to develop his property. Plaintiff alleges, on information and belief, that the Building Inspector spoke with the Safety Officer, Macy Joseph ("Joseph"), to cause Joseph to deny approval of Plaintiff's proposed curb cuts, which Joseph did. It is a fair inference from that alleged fact that Joseph assisted in the Building Inspector's plan to delay and interfere with Plaintiff's development. Not specifically alleged but which would be added if Plaintiff is allowed to amend his complaint is that Joseph stated to Plaintiff that the Building Inspector told Joseph that the curb cuts should be denied to require Plaintiff to go to a Planning Board site review.

Further supporting the Plaintiff's claim is the action of the Superintendent of Public Works who, as is alleged in Plaintiff's complaint, advised Plaintiff that he could not approve curb cuts without speaking with the Building Inspector. Plaintiff requested information on what role the Building Inspector had in approval of curb cuts but received no response. The Building Inspector had conditioned Plaintiff's building permit on, among other things, approval of the curb cuts. A fair inference from these allegations is that the Building Inspector involved himself with the Superintendent of Public Works which caused the Superintendent to act to delay the approval of Plaintiff's proposed curb cuts. Further support for that inference is proved by the allegations of difficulty Plaintiff experienced in having the curb cut reviewed by the Board of Pubic Works.

Plaintiff sought a review of the proposed curb cuts with the Board of Public Works on or about June 23, 2003. The Superintendent stated he could not place the matter on the Board's agenda without speaking to Town Counsel. As of August 6, 2003, the matter was still not placed on the Board's agenda and Plaintiff renewed his request. Plaintiff also requested that the issue of his inability to have the matter placed on the Board's agenda should also be considered by the Board. Finally, on August 12, 2003, in response to Plaintiff's renewed request, the curb cuts were suddenly approved by both the Superintendent and Joseph without change and without the need for a review by the full Board.

These allegations of the complaint fairly raise an inference on which a jury could conclude that Joseph and the Superintendent of Public Works took steps, at the Building Inspector's direction, to delay approval of Plaintiff's curb cuts and did delay such approval, for no legitimate reason. That inference would be strengthened if the amendment of the complaint discussed above is allowed.

Massachusetts recognizes two types of claims for civil conspiracy. *Aetna Cas. Sur. Co. v P & B Autobody* 43 F.3d. 1546, 1563-1564 (1st Cir. 1994). In addition the Massachusetts Appeals Court acknowledged, without specifically adopting, the form of conspiracy described in Restatement (Second) of Torts §876 (b). *Kurker v Hill*, 44 Mass. App Ct. 184.

The first type requires an element of coercion. *Aetna, supra*. Coercion in the context is where the wrong was in the particular combination of defendants. *Kurker, supra* It applies where defendants, acting in unison, had some particular power of coercion which they would not have had if they had been acting independently. *Jurgens v Abraham*, 616 F.Supp. 1381, 1386 (D.Mass.1985).

7

Plaintiff's complaint fairly alleges that the Building Inspector required curb cut approval as a prerequisite for granting a building permit and that he then spoke with the Joseph, to cause a denial of those curb cuts. Joseph went along with that plan and denied Plaintiff's curb cuts. Only after Plaintiff's request for a hearing before the Board of Public Works were the curb cuts allowed months later with no changes. The Building Inspector could not have denied curb cut approval on his own. The complaint fairly alleges that the Building Inspector acted in concert with Joseph to effect a denial of the curb cuts to support the Building Inspector's continued refusal to issue a building permit. That claim would be further supported if Plaintiff is allowed to amend his complaint as described above.

Plaintiff has also alleged that the Superintendent of Public Works stated that he needed to speak with the Building Inspector prior to acting on the curb cuts but when asked by Plaintiff what role the Building Inspector played in curb cut approval, provided no response. When Plaintiff sought to have the matter heard by the Board of Public Works, the curb cuts were approved without change.

Those allegations and reasonable interferences therefrom fairly raise the issue of a conspiracy through coercion.

The second type of conspiracy imposes liability where a person knows that the conduct of another constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself. Restatement (Second) of Torts) §876(b) (1992). Plaintiff's complaint alleges that the Building Inspector directed and encouraged Joseph to deny Plaintiff's curb cuts despite the fact that said curb cuts were consistent with the regulations of the Department of Public Works and that Joseph acted on that direction to deny approval of Plaintiff's curb cuts. See: *Nelson v Nason*, 343 Mass. 220, 222 (1961) (recovery allowed under

8

concerted action theory of §876 (b) where defendant's deliberate conduct caused another to engage in tortious activity)

G.   Qualified immunity

"Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known". *Roldon-Plumey v Arezo-Suarez*, 115 F.3d. 58, 65 (1st Cir. 1997) (quoting *Nereda-Gonzales v tuado-Delgado*, 990 F.2d. 701, 704 (1st. Cir. 1993),.

Plaintiff's complaint alleges that he has submitted an application for a building permit which meets the provisions of the Massachusetts Building Code and the Fairhaven Zoning Ordinances. If true, Plaintiff would be entitled to the issuance of a building permit That issuance would be a ministerial function, not a discretionary function and no qualified immunity would be available to the Building Inspector for his failure to issue said permits based on an interpretation of what constitutes a drive-thru window which is applied to Plaintiff's application but not that of similarly situated persons. See: *Breault v. Chairman of the Board of Fire Commissioners of Springfield* 401 Mass 26 (1987).

Even if the Building Inspector's application and interpretation of the zoning ordinances is discretionary, the right of Plaintiff to have an equal application and interpretation with those similarly situated is a clearly established constitutional right. The Building Inspector cannot interpret the zoning ordinances one way for Plaintiff and a different way for similarly situated persons. A reasonable person in The Building Inspector's position would realize that unequal application of the zoning ordinances to similarly situated persons would be a violation of the right to equal treatment under the law.

9

The Building Inspector has asserted that Plaintiff's plans call for a drive-thru window. He has persisted in that position despite the fact that Plaintiff's plans as alleged in the complaint do not call for a drive-thru window. If allowed to amend his complaint, Plaintiff would allege that the Building Inspector has based his determination on the fact that there is paving around the back of the building and that with regard to Plaintiff's application for a permit, the Building Inspector has defined a "drive-thru window" as the presence of paving around the building. Plaintiff would further allege that the Building Inspector has not made that determination with regard to other developments in Fairhaven which have paving behind the building, that there is no definition of a "drive-thru window" in the Fairhaven zoning ordinances and that the Building Inspector's use of a definition of a drive-thru window for Plaintiff's building permit application which is not applied to other building permit applications is conduct which a reasonable person would know was in violation of Plaintiff's right to equal treatment.

## III. CONCLUSION

For the reasons stated herein Plaintiff respectfully request that Defendants' motion, except as to Count IV of the complaint, be denied and that Plaintiff be allowed to amend his complaint as set forth herein.

MICHAEL W. PANAGAKOS,
By his attorney,

_Gregory J. Koldys_
Gregory J. Koldys
MICKELSON • BARNET, P.C.
30 Cornell Street
New Bedford, MA 02740
Telephone (508) 993-8800
BBO #276840

Dated: March 19, 2004

D/PANAGAKOS/VS. TOWN OF FAIRHAVEN/MEMO REASONS IN SUPPORT

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record (party) by mail (in hand) AND FACSIMILE on 3/19/04

_Gregory J. Koldys_

10