UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2003-CV-12278-JLA

MICHAEL W. PANAGAKOS,
Plaintiff

V.

TOWN OF FAIRHAVEN  AND WAYNE FOSTIN,
Defendants

## ORDER ON

## THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

ALEXANDER, M.J.

This suit for declaratory judgment, mandamus, and damages arises from the refusal

of the defendants, Wayne Fostin ("Mr. Fostin"), and the Town of Fairhaven ("Town"), to

issue the plaintiff, Michael W. Panagakos ("Mr. Panagakos"), a building permit for a

proposed commercial building on property in Fairhaven, Massachusetts.  The defendants

move for partial judgment on the pleadings.  After review of the motion and the

opposition thereto and with the benefit of counsel's presentations at hearing, for the

reasons set forth more fully below, the motion is ALLOWED IN PART and DENIED IN

PART.

**RELEVANT BACKGROUND**

The facts of this case are construed in the light most favorable to the non-movant,

Mr. Panagakos.  Santiago de Castro v. Morales-Medina, 943 F.2d 129, 130 (1st Cir.

1991).

Mr. Fostin is the building inspector for the Town.  Upon receiving applications for

foundation and building permits to construct on property located at 240 Bridge Street,

Fairhaven, MA ("the Premises"), Mr. Fostin responded to the application for a

building/foundation permit by advising Mr. Panagakos that a permit could not issue for

various reasons; those reasons included the suggestion that a special permit was required

for drive-through windows, that the parking area did not comply with the zoning

regulations, and that Mr. Panagakos could not use controlled construction for a project the

size of his proposed development and that a licensed construction supervisor would need

to obtain the permit.[1]

After receiving the response, Mr. Panagakos advised Mr. Fostin that he would

apply for the requisite special permit for any drive-through window even though the plans

did not specifically call for a drive-through window.  Mr. Panagakos also filed a fixed

seating plan with Mr. Fostin, and advised Mr. Fostin that although he (Mr. Panagakos)

believed that controlled construction was not required for the project, he would use

controlled construction.  Messrs. Panagakos and Fostin then debated whether

Massachusetts regulations permitted Mr. Panagakos' architect to serve as a construction

---

[1]It appears that Mr. Panagakos submitted the required plans, as well as an approval
from the fire department, a worker's compensation certificate, a notice of availability of
sewer and water from the department of public works and energy compliance reports.

2

supervisor; Mr. Panagakos evidently insisted that his architect could serve in that capacity while Mr. Fostin persisted that he could not.

Mr. Fostin replied that the special permit process applied to the entire project and that he could not issue either a building or a foundation permit until the special permit process was complete. Mr. Fostin subsequently indicated that the fixed seating plan that was filed was insufficient and did not provide necessary detail for a Board of Health review, that the Town's Department of Public Works ("DPW") needed to approve the curb cuts and driveway, that no permit of any type could issue until a special permit was approved for the drive-through window, and that a licensed construction supervisor must be hired. Mr. Panagakos advised the building inspector that he disagreed, and again requested that Mr. Fostin issue at least a foundation permit.

Despite his apparent disagreement, Mr. Panagakos sought approval of the proposed driveway and curb cuts from Macy Joseph ("Mr. Joseph") of the Town's DPW. After meeting with the plaintiff, Mr. Joseph told Mr. Panagakos that the driveway and curb cuts would not be approved because they purportedly failed to comply with town regulations. Mr. Joseph further indicated that he would not receive approval of the curb cuts to the extent that those cuts were sought for certain abutting roadways. Mr. Panagakos then requested that the superintendent of DPW place the issue of the curb cuts and driveways on the agenda for a board of public works meeting, and to have the board review the denial. The superintendent indicated that he could not place the matter on the

agenda without consulting the Town's attorney. Mr. Panagakos also requested that the Town explain how Mr. Fostin was involved in the DPW review process; it does not appear that such an explanation was provided.

After further requests by Mr. Panagakos, the superintendent eventually advised Mr. Panagakos that the failure to approve his curb cuts and driveway was due to a "mix-up" regarding the plans the curb cuts and driveway plans submitted by Mr. Panagakos. The plans were then approved.

Upon notice of that approval, Mr. Panagakos renewed his request for a building permit or, at the least, a foundation permit.  After he again was refused the permits, Mr. Panagakos commenced suit against the defendants in the Commonwealth's courts.  The instant suit seeks a writ of mandamus, and damages for civil conspiracy and alleged violations of the rights afforded by the Fourteenth Amendment to the U.S. Constitution and the Massachusetts Constitution, substantive due process, and the Massachusetts Equal Rights Act.  The complaint further seeks a declaration that Mr. Panagakos is entitled to the permits.

**ANALYSIS**

**Judgment on the Pleadings Standard of Review**

Federal Rule of Civil Procedure 12(c) allows a party "[a]fter pleadings are closed but within such a time as not to delay the trial [to] move for judgment on the pleadings." Because the rendition of a judgment in such an abrupt fashion represents an extremely

4

early assessment of the merits of the case, a court reviewing a motion for judgment on the pleadings "must accept all the non-movant's well-pleaded factual averments as true and draw all reasonable inferences in his favor. Santiago de Castro v. Morales Medina, 942 F.2d 129, 130 (1st Cir. 1991), *quoting,* Rivera-Gomez v de Castro, 843 F.2d 631, 635 (1st Cir. 1988). A rule 12(c) motion for judgment on the pleadings "only has utility when all the material allegations of fact are admitted and only questions." State Farm Mutual Automobile Ins. Co. v. Powell, 879 F. Supp. 538, 541 (W.D. Pa. 1995) (holding that judgment on the pleadings unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief." *See also* Lamanque v. Mass. Dept. Employment and Training, 3 F. Supp.2d 83, 89 (D. Mass. 1998); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (reflecting a general unwillingness to grant a motion pursuant to Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. The deference due to allegations of a complaint, however, does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert v. Cambridge, 932 F.2d 962, 971 (1st Cir. 1991). "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id. With this general standard in mind, the Court turns to the particular claims at issue.

**Count One:  Writ of Mandamus**

The defendants seek to dismiss portions of Count One of the complaint, which seeks a writ of mandamus directing the Town to issue a permit for the foundation of the building.  The defendants aver that because the issuance of foundation permits lies within the discretion of the municipal officer pursuant to the Code of Massachusetts Regulations, *see* 780 C.M.R. § 110.13, it is not subject to mandamus power.[2]

The writ of mandamus is an extraordinary remedy that is seldom implemented in Massachusetts.  In determining whether mandamus jurisdiction is proper, the Court must look to "the applicable statute, its legislative history, regulations promulgated pursuant to its terms, and any other relevant aides in order to determine the scope of discretion the officer enjoyed and accordingly, whether that discretion was abused."  McMahon v. Califano, 476 F. Supp. 978, 981 (D. Mass. 1979).  Courts traditionally are "reluctant to

---

[2]The Code of Massachusetts Regulations states in relevant part:

the building official *may* issue a permit for the construction of foundations or any other part of a building or structure before the construction documents for the whole building or structure have been submitted, provided that adequate information and detailed statements have been filed complying with all of the pertinent requirements of 780 CMR.  Work shall be limited to that work approved by the partial approval and further work shall proceed only when the building permit is amended in accordance with 780 CMR 110.13.  The holder of such permit for the foundation of other parts of a building or structure shall proceed at the holder's own risk with the building operation and without assurance that a permit for the entire building or structure will be granted.

780 CMR 110.13 (emphasis supplied).

assert mandamus jurisdiction for the same reason that they generally have required

exhaustion of administrative remedies: the desire to avoid premature judicial review and

to minimize interference with the functioning of a coordinate branch of government."

Mayburg v. Heckler, 574 F. Supp. 922, 927 (D. Mass. 1983).  Moreover, mandamus is

only appropriate only when not other adequate remedy is available.  Mayburg v. Sec'y of

Health and Human Services, 740 F. 2d 100 (1st Cir. 1984).  Not surprisingly then, there is

a relative paucity of recent case law in Massachusetts regarding mandamus jurisdiction.

The defendants correctly conclude assert that the use of the word "may" in a

statute typically imports the existence of discretion, Shea v. Board of Selectman of Ware,

34 Mass. App. Ct. 333, 334, 615 N.E. 2d 196, 199 (1993); Hunters Brook Realty Corp. v.

Zoning Bd. Of Appeals of Bourne, 14 Mass. App. Ct. 76, 80, 436 N.E. 2d 978, 981

(1982), while legislatures indicate the imposition of a mandatory obligation by using the

word "shall."  Glazer Construction Co., Inc. v. United States, 50 F. Supp.2d 85, 93 (D.

Mass. 1999).   As the issuance of the foundation permit is discretionary, mandamus would

be an inappropriate remedy because mandamus relief does not lie to compel a municipal

officer such as Mr. Fostin to exercise his judgment or discretion in a particular way.  *See*

Matter of Electric Mut. Liability Ins. Co., Ltd., 426 Mass. 1007, 1008, 689 N.E. 2d 773,

774 (1998).  *See also* 780 C.M.R. 111.13.  Furthermore, ordering an official body to

make discretionary determinations is not a proper function of the writ of mandamus

because if the act is discretionary, there is no official duty to perform it.  L.G.G. v. Dep't

of Social Servs., 429 Mass. 1008, 1010, 709 N.E. 2d 1108, 1110 (1999).  Thus, as far as

the foundation permit is concerned, a mandamus action is not viable.  At hearing, counsel

for the plaintiff appeared to concede as much.  Accordingly, the Court ALLOWS the

motion for judgment on the pleadings to the extent that Count One of the complaint seeks

mandamus regarding the foundation permit.

 The defendants do not suggest that the building permit is not subject to mandamus

power, but do not squarely address the issue; the plaintiff's complaint and opposition to

the instant motion suggest that he still seeks mandamus for the building permit.  Despite

the lack of evidence presented by either party that might suggest that the issuance of a

building permit is discretionary, courts recognize that "relief in the nature of mandamus is

extraordinary and may not be granted except to prevent a failure of justice in instances

where there is not other adequate remedy."  Lynch v. Police Comm'r of Boston, 43 Mass.

App. Ct. 107, 109, 681 N.E. 2d 307, 308 (1997), *citing* Lutheran Serv. Ass'n of New

England, Inc. v. Met. Dist. Comm'n, 397 Mass. 341, 344, 491 N.E. 2d 255, 258 (1986).

"It is a remedy to be used only as a last resort when nothing else [will] work."  Id. at 674.

 Against that legal backdrop, the Court has some concern about the appropriateness

of mandamus regarding the building permit.   However, in that the plaintiff avers that his

application for a building permit met the requisite provisions of the applicable code and

zoning ordinances and that he is thus entitled to the issuance of a building permit because

such an issuance would be a ministerial function rather than a discretionary one, and in

8

that the defendants do not address the issue, the Court DENIES WITHOUT PREJUDICE the motion for judgment on the pleadings to the extent it seeks to dispose of that portion of Count One that seeks mandamus on the issue of the building permit. In so doing, the Court ORDERS that parties submit supplemental memoranda within thirty (30) days of receipt of this Order addressing whether all of Mr. Panagakos' alternative remedies and avenues were appropriately exhausted.

**Count Two: Violations of Equal Protection Clause**

Mr. Panagakos asserts that the defendants imposed requirements on him in pursuit of permits for the premises that were not imposed on similarly situated property owners, thereby violating the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and similar provisions of the Massachusetts Declaration of Rights.[3] At hearing, the plaintiff conceded that the complaint does not specifically identify the similarly situated persons who were treated differently and was allowed to seek leave to amend his complaint to add those allegations. Despite the proposed amendments, however, the claim fails.

"As a general matter, the equal protection clause serves to protect suspect classes and fundamental interests from inequitable treatment." Yeardis' Moody Street Rest. & Lounge, Inc., 932 F.2d 89, 94 (1st Cir. 1991). As the First Circuit instructs, "liability [for

_____

[3]Review of an equal protection claim is the same under the Massachusetts Declaration of Rights as it is under the Fourteenth Amendment to the federal constitution. LaCava v. Lucander, 58 Mass. App. Ct. 527, 532,791 N.E. 2d 358, 362 (2003).

a claim of] equal protection . . . should depend on proof (1) the person compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Yeardis II, 932 F.2d at 92 (internal quotations and citation omitted).  Mr. Panagakos must therefore show both that he was selectively treated in contrast with others similarly situated *and* that the selective treatment was based on an impermissible consideration. *See* id.; Commonwealth v. Silva, 21 Mass. App. Ct. 536, 488 N.E. 2d 34 (1986).  Further, in order to bring an equal protection claim for a regulator's malice, the plaintiff must prove that others who are similarly situated in "all relevant aspects" were not similarly regulated.  Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995), *citing* Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989).  *See also* Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortgage Fin. Corp., 246 F.3d 1 (1st Cir. 2001); Futernick v. Sumpter Tp., 78 F.3d 1051, 1054 (6th Cir. 1996).  He fails to do so, even by the proposed amendments.

Thus, having reviewed the proposed amendments, the Court concludes that even if it were to allow Mr. Panagakos to amend his complaint to add the proffered allegations of similarly situated businesses who were not required to obtain a special permit for a drive through window, his claim would fail.    Futernick, 78 F.3d at 1051; Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995); FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2nd

Cir. 1992) (affirming grant of summary judgment because evidence of malice insufficient).  Nor are there sufficient allegations of racial, religious, speech-based, or other forms of discrimination from which a jury reasonably could find that the defendants acted with malicious or bad faith intent to injure.  Yeardis, 878 F.2d at 21.  Different treatment alone does not establish bad faith or an intent to injure.  See id., citing LeClair v. Saunders, 627 F.2d 606, 609-610 (2d Cir. 1980).   To the extent that Mr. Panagakos attempts to present a "class of one" equal protection claim, see Village of Willowbrook v. Olech, 528 U.S. 562 (2000), he fails to do so.  Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000).

As such, the defendants' motion for judgment on the pleadings with respect to Count Two is ALLOWED.

**Count Three:  Claims of Violation of Due Process**

Mr. Panagakos also alleges that the defendants deprived him of his rights to substantive due process under the Fourteenth Amendment of the United States Constitution and Article 12 of the Massachusetts Declaration of Rights because the decision to deny Mr. Panagakos the building and foundation permits was based, allegedly, on the "arbitrary and capricious whim" of the defendants.  The defendants direct the Court to rulings by the First Circuit and the Supreme Judicial Court which repeatedly express reluctance to entertain substantive due process challenges to land use decisions by local officials.  See, e.g. PFZ Properties, Inc. v. Rodriguez, 928 F. 2d 28, 31 (1st Cir.

1991) (citing its history that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process). A complaint pleads a substantive due process violation by a local administrative agency only if the facts are "shocking and violative of universal standards of decency." Amsden v. Moran, 904 F.2d 748, 751 (1st Cir. 1990). It is not enough to show that the board "exceeded, abused or 'distorted' its legal authority," Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 823 (1st Cir. 1982), or that it committed an outright violation of state law. Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir. 1983).

Although the door to federal relief based on substantive due process is open in extreme cases, courts hold that even the failure of a planning agency to act on an application for over four years does not reach the level of "conscience shocking activity" for substantive due process purposes. PFZ Properties, 928 F.2d at 31-32. Similarly, in Chiplin, a planning board, after granting preliminary approval to a development project, denied a building permit for the project. 712 F.2d at 1528. There, the First Circuit rejected a claim of violation of substantive due process rights, stating that "a mere bad faith refusal to follow state law in such local administrative matters simply does not amount to deprivation of due process where the state courts are available to correct error." Id. Furthermore, "even bad faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process." Amsden, 904 F.2d at 748.

Mr. Panagakos claims that Mr. Fostin took steps to interfere with the approval of

his curb cuts and that Mr. Fostin applied a different standard to his permit application than that applied to similarly situated persons.  Even assuming that Mr. Fostin engaged in delaying tactics and refused to issue the building permit based on considerations outside the scope of his jurisdiction under Massachusetts law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label.  As such, the Court ALLOWS the motion for judgment on the pleadings to the extent that it is predicated on the substantive due process claim.

**Count Four:  The Massachusetts Equal Rights Act Claim**

Although Mr. Panagakos asserts a claim for violation of the Massachusetts Equal Right Act, Mass. Gen. Laws ch. 93, §§ 102 *et seq.*, he concedes that he did not allege membership in a protected class and that he does not oppose dismissal of that count.   As such, the Court ALLOWS the motion for judgment on the pleadings to the extent that the motion is directed at this count of the complaint.

**The Issue of Qualified Immunity**

To the extent that the claims in the Complaint are directed toward Mr. Fostin, he contends that they must fail because that he is entitled to qualified immunity for those acts.

Qualified immunity "shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable

person would have known." Rolden-Plumey v. Cerezo-Suarez, 115 F. 3d 58, 65 (1st Cir. 1997). To determine whether qualified immunity is available to a public official, courts employ a three part test to determine: 1) whether plaintiff's allegations, if true, establish a constitutional violation; 2) whether that right was clearly established at the time of the alleged violation; and 3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional issue. Mihos v. Swift, 358 F. 3d 91 (1st Cir. 2004), citing Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F. 3d 81, 90 (1st Cir. 2002). A right is not "clearly established" unless at the time the challenged conduct occurred, "the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular right." Martinez v. Colon, 54 F.3d 980, 988 (1st Cir. 1995). In order to defeat government officials' invocation of qualified immunity as a defense "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right in light of the existing law, the unlawfulness must be apparent." Duca v. Martin, 941 F. Supp. 1281, 1287 (D. Mass. 1996). Put another way, qualified immunity poses the question of whether the allegedly violated right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly. See, e.g., Anderson v. Creighton, 483 U.S. 635, 640 (1987). Qualified immunity proposes to protect government functionaries who could not reasonably have predicted that their actions

14

would abridge the rights of others, even though, at the end of the day, those officials may have engaged in rights-violating conduct.  Id. at 639-641.

In considering the application of the test here, the Court looks to the plaintiff's allegations that his application for a building permit met the requisite provisions of the applicable code and zoning ordinances.  As noted above, the plaintiff contends that he met all applicable prerequisites and, therefore, that the issuance of a building permit is a ministerial function rather than a discretionary one.  As such, pursuant to Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727 (1982), he contends that immunity does not obtain because qualified immunity is only available to an official "performing discretionary functions."

In that the defendants fail to establish that the act of issuing a building permit is discretionary, the Court does not find that qualified immunity obtains to those counts of the complaint arising from the denial of the building permit.  The motion for judgment on the pleadings is DENIED WITHOUT PREJUDICE to the extent that it seeks judgment on the basis of qualified immunity for any act or omission related to the refusal to issue Mr. Panagakos a building permit.  In so doing, however, the Court is neither persuaded that Mr. Panagakos makes any showing that there is a clearly established constitutional or statutory right at issue, nor that there has been a violation of that right.

To the extent that the allegations of the complaint are based upon the failure to issue the foundation permit, the Court concludes that such an act is within the discretion

of the officials.    As such, the doctrine of qualified immunity obtains here.

Mr. Panagakos fails to establish the existence of a clearly established constitutional or statutory right with respect to the percipient conduct of the defendants.  Indeed, it is not clear that the defendants' conduct creates a violation at present, yet alone that the right was clearly established at the relevant times.  Rolden-Plumey, 115 F. 3d at 65. Thus, to the extent that the motion seeks relief on the basis of qualified immunity, the Court ALLOWS the motion with respect to defendants actions and inactions with regard to the foundation permit.

**Civil Conspiracy**

Mr. Panagakos avers that the actions of the defendants constituted concerted action to improperly interfere with his development of the Premises and to deprive him the benefit of developing the Premises.  He brings a common law claim of civil conspiracy pursuant to Massachusetts law.

The defendants correctly assert that civil conspiracy is an intentional tort (because an essential element of the claim is the knowing or deliberate act of the alleged conspirators to further the conspiracy).  Aetna Casualty Surety Co. v. P & B Autobody, et al., 43 F.3d 1546, 1564 (1st Cir. 1994).  The Town is immune from liability for intentional torts pursuant to the Massachusetts Tort Claims Act, G.L. c. 258 §10(c).  Thus, to the extent that the motion for judgment on the pleadings is directed to the claims against the Town on the conspiracy claim, the motion is ALLOWED.  The Court continues with its

analysis of the conspiracy claim as it pertains to Mr. Fostin.

The Commonwealth recognizes two types of common law civil conspiracy. The first form, a "very limited cause of action in Massachusetts," consists of (1) individuals "acting in unison" (2) in order to have "some peculiar power of coercion over" the plaintiff which they would not have had "acting independently." Aetna, 43 F.3d at 1563; Jurgen v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985).

The second type of civil conspiracy at Massachusetts law is, essentially, "a theory of common law joint liability in tort," Aetna, 43 F.3d at 1564, and connotes "vicarious liability in tort for 'concerted action'." See W. Page Keeton, Prosser and Keeton on Torts 322 (5th ed. 1984); Restatement (Second) of Torts §876(b)(1992). This form of conspiracy imposes liability where a person knows that the conduct of another constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself. Id. "For liability to attach on this basis there must be, first a common design or agreement, although not necessarily express between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna, 43 F.3d at 1564; Restatement (Second) of Torts §876 cmt. b. In Kurker v. Hill, the court noted that "the key to this cause of action is a defendant's substantial assistance with the knowledge that such assistance is contributing to a common tortious plan." 44 Mass. App. Ct. 184, 689 N.E. 2d 83 (1998).

To succeed on either form of civil conspiracy claim against Mr. Fostin, Mr.

17

Panagakos must show that Mr. Fostin or any other town official acted deliberately, knowingly or in concert against Mr. Panagakos.   Mr. Panagakos alleges that Mr. Fostin acted in concert with Mr. Joseph to effect a denial of the curb cuts, thereby supporting Mr. Fostin's continued refusal to issue a building permit.   These allegations, however, do not satisfy the first form of conspiracy because the plaintiff's main complaint is that he is unable to obtain a building or foundation permit.  Given that the building inspector alone has the authority to deny a building or foundation permit, 780 CMR 106.2, the plaintiff fails to illustrate how a claim of conspiracy can be established by his allegations. Though Mr. Panagakos seeks to amend his complaint to aver that Mr. Joseph stated to the plaintiff that Mr. Fostin told Mr. Joseph that the curb cuts should be denied, thereby requiring the plaintiff to go to a planning board review, such allegations still do not rise to the level of "some peculiar power of coercion over the plaintiff" which would not have existed had Mr. Fostin acted independently.

Moreover, although Mr. Panagakos alleges that the curb cuts that were denied by Mr. Joseph complied with all the DPW regulations, he does not present an allegation that Mr. Fostin and Mr. Joseph were acting in concert for a wrongful act.  He fails to address that the defendants' denials purportedly were based not only on the curb cut concerns, but also the drive-through window permitting issue, the alleged inadequacy of the fixed seating plan, and the use of an architect rather than an engineer in applying for the permits.

18

In sum, the concerted action prong of the conspiracy claim is one that appears to be based on pure speculation that arises from the mere fact that different town officials denied Mr. Panagakos' requests.  If such allegations were enough, every permit applicant with deficient or noncompliant plans would have a cause of action.  Where, as here, "an essential element of the charge of civil conspiracy is missing, namely that of unlawful action and an agreement among parties to inflict a wrong against another, then a jury could not find for the plaintiff without speculation and conjecture."  Therrien v. Hamilton, 881 F. Supp. 76 (D. Mass. 1995).  In that Mr. Panagakos fails to proffer allegations that the officials accused of conspiring did in fact do so, the motion for judgment on the pleadings in this count is ALLOWED.

**Official Capacity**

The defendants seek to dismiss official capacity claims in counts two, three and four against Mr. Fostin as duplicative to those against the town.  An "official capacity" suit is a suit against a government entity itself.  _See_ Brandon v. Holt, 469 U.S. 464, 471-72 (1985); American PolicyHolders Ins. Co. v. Nyacol Prods., Inc., 989 F.2d 1256, 1259 (1st Cir. 1993).  The defendants aver that because the Town is a named defendant in this action and Mr. Panagakos asserts the same civil rights claims against the town as he has against Mr. Fostin, the defendants' motion for judgment on the pleadings should be granted because the claims are duplicative of others.

It is true that the law clearly abhors duplicative recoveries.  A plaintiff who is

injured by reason of a defendant's behavior is, for the most part, entitled to be made whole – not enriched – by a judgment. *See, e.g.,* <u>Borden v. Paul Revere Life Ins. Co.</u>, 935 F.2d 370, 383 (1st Cir. 1991). The Court's concern with respect to this aspect of the defendants' motion for judgment on the pleadings regarding the dismissal of the claims at issue here is that the case is in its early stages. The Court cannot speculate as to what, if anything, discovery might show with respect to any misconduct or malfeasance by the various defendants and their respective roles in this case.

Thus, the motion for judgment on the pleadings is DENIED WITHOUT PREJUDICE to the extent that it seeks judgment on this count. The defendants are free to renew this issue if and when the issue of a potentially duplicative recovery becomes extant.

## Conclusion

For the reasons set forth more fully above, the Court ALLOWS the defendant's motion for judgment on the pleadings with respect to Counts Two (equal protection), Three (due process), Four (Massachusetts Equal Rights Act), and Five (civil conspiracy) in their entirety, and on Count One (mandamus) to the extent that Count One seeks mandamus related to the failure to issue a building permit. Further, to the extent that the motion asserts that Mr. Fostin is entitled to the defense of qualified immunity, the motion is ALLOWED to the extent that the complaint sets forth claims of constitutional violations arising from the denial of the foundation permit sought by Mr. Panagakos and

20

DENIED WITHOUT PREJUDICE to the extent that it is predicated on the building

permit application.

SO ORDERED.


9/29/04                                   /S/ Joyce London Alexander
Date                                      United States Magistrate Judge

21